1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9

10   RENEE BISHOP-MCKEAN,                    CASE NO. C20-5416JLR

11                          Plaintiff,       ORDER

          v.
12

13   WASHINGTON DEPARTMENT
     OF CORRECTIONS, et al.,

14
                            Defendant.
15

16                    **I.      INTRODUCTION**

17        Before the court is United States Magistrate Judge David W. Christel's report and

18   recommendation ("R&R") (R&R (Dkt. # 136)); *pro se* Plaintiff Renee Bishop-McKean's

19   objections thereto (Obj. (Dkt. # 143)); and Defendants Warden Deborah J. Wofford, Dr.

20   Mary Colter, Jesse Suarez, Tania Boyce, and Megan Meitninger-Dunlap's (collectively,

21   "Defendants") response to Ms. Bishop-McKean's objections, which includes a motion to

22   strike (Resp. (Dkt. # 147)).  Magistrate Judge Christel recommends granting Defendants'

1 | motion for summary judgment (MSJ (Dkt. # 112)) and denying Ms. Bishop-McKean's

2 | cross-motion for summary judgment (X-MSJ (Dkt. # 116)).  (*See* R&R at 30.)  Having

3 | carefully reviewed the foregoing, all other relevant documents, and the applicable law,

4 | the court ADOPTS the Report and Recommendation in full (Dkt. # 136).

## II.    ANALYSIS[1]

6 | A district court has jurisdiction to review a Magistrate Judge's report and

7 | recommendation on dispositive matters.  Fed. R. Civ. P. 72(b).  "The district judge must

8 | determine de novo any part of the magistrate judge's disposition that has been properly

9 | objected to."  *Id.*  "A judge of the court may accept, reject, or modify, in whole or in part,

10 | the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

11 | The court reviews de novo those portions of the report and recommendation to which a

12 | party makes a specific written objection.  *United States v. Reyna-Tapia*, 328 F.3d 1114,

13 | 1121 (9th Cir. 2003) (en banc).  "The statute makes it clear that the district judge must

14 | review the magistrate judge's findings and recommendations de novo if objection is

15 | made, but not otherwise."  *Id.*  Because Ms. Bishop-McKean is proceeding *pro se*, the

16 | court must interpret her filings liberally.  *See Bernhardt v. Los Angeles Cnty.*, 339 F.3d

17 | 920, 925 (9th Cir. 2003).

18 | Ms. Bishop-McKean's objections broadly attack Magistrate Judge Christel's

19 | recommendations that the court (1) dismiss her claims against Warden Wofford with

20 | //

---

[1] The court ADOPTS Magistrate Judge Christel's detailed discussion of the factual and procedural background of this case.  (*See* R&R at 1-12.)

1    prejudice, based on her failure to plead any facts suggesting that she participated in a

2    constitutional violation (*see* R&R at 16-18); (2) grant summary judgment to Defendants

3    on Ms. Bishop-McKean's Eighth Amendment claims against Dr. Colter, Ms. Boyce, Mr.

4    Suarez, and Ms. Meitninger-Dunlap, because the record does not show that "her course of

5    treatment was medically unacceptable or chosen in conscious disregard of an excessive

6    risk to her health" (*see id.* at 18-27); and (3) grant summary judgment to Defendants on

7    any claims arising from conduct that occurred prior to May 1, 2017, because those claims

8    are barred by the applicable statute of limitations (*see id.* at 27-30).  (*See generally* Obj.)

9         The court has considered Magistrate Judge Christel's recommendations de novo in

10   light of those objections.  With the exception of a few objections, which the court

11   addresses below, Ms. Bishop-McKean largely raises issues that were addressed by

12   Magistrate Judge Christel's report and recommendation.  Moreover, the court has

13   thoroughly examined the record before it and finds Magistrate Judge Christel's reasoning

14   persuasive in light of that record.  Therefore, the court ADOPTS the report and

15   recommendation in full, with respect to the motions and claims discussed therein.

16        Below, the court first addresses Defendants' motion to strike before turning to

17   consider the handful of issues raised by Ms. Bishop-McKean that warrant specific

18   discussion.

19   **A.    Defendants' Motion to Strike**

20        Defendants move to strike several filings, including:  (1) Ms. Bishop-McKean's

21   objections because they are unsigned and over-length (*see* Obj.); (2) declarations

22   submitted by Ms. Bishop-McKean and Shelley Arndt, a fellow inmate at the Washington

1    Corrections Center for Women ("WCCW"), because they are either unsigned, unsworn,

2    or both (*see id.*, Ex. 1 at 1 (Ms. Bishop-McKean's declaration); *id.*, Ex. 1 at 2 (Ms.

3    Arndt's declaration)); (3) a "supplement" to Ms. Bishop-McKean's objections, because it

4    exceeds the applicable page limit (*see* Suppl. Obj. (Dkt. # 146)); and (4) a supplemental

5    declaration from Ms. Arndt, because it is unsworn and contains a medical diagnosis that

6    Ms. Arndt is not qualified to make (*see id.*, Ex. 1 at 1).  (*See* Resp. at 1-2.)

7         After Defendants filed their response, Ms. Bishop-McKean filed a praecipe

8    correcting the lack of signature on her objections and declaration.  (*See* Praecipe (Dkt.

9    # 148) at 2, 4.)  Additionally, in their initial declarations, both Ms. Bishop-McKean and

10   Ms. Arndt's included sufficient acknowledgement that the statements were being made

11   under penalty of perjury to comply with 28 U.S.C. § 1746.  (*See* Obj., Ex. 1 at 1-2.)  The

12   court thus DECLINES TO STRIKE Ms. Bishop-McKean's objection in its entirety, her

13   supporting declaration, or Ms. Arndt's initial declaration.

14        However, the court does STRIKE and does not consider pages 13 and 14 of Ms.

15   Bishop-McKean's objections, as well as the supplement to her objections, because those

16   filings exceed the applicable 12-page limit, of which the court took special care to ensure

17   Ms. Bishop-McKean was aware.  (*See* 8/8/22 Min. Order (Dkt. # 142) at 1-2 (citing Local

18   Rules W.D. Wash. LCR 72); *see also* 8/5/22 Ltr. (Dkt. # 141).)  The court further

19   STRIKES Ms. Bishop-McKean's "supplement" to her objections, including the attached

20   supplemental declaration of Ms. Arndt, because those documents were not timely filed.

21   (*See* 8/8/22 Min. Order (ordering Ms. Bishop-McKean to file specific objections to the

22   report and recommendation, if any, by August 12, 2022).)  Finally, on its own motion, the

1    court STRIKES any arguments contained in Ms. Bishop-McKean's praecipe, which she

2    styles as a reply to Defendants' motion to strike, and the further supplement to her

3    objections filed on September 1, 2022.  (*See* Praecipe; *see also* 2d Suppl. Obj. (Dkt.

4    # 149).)  The court accepts these filings as praecipes to correct deficiencies in prior

5    filings only; any supplemental arguments in support of her objections are in the nature of

6    a reply brief, which she was not entitled to submit.  *See* Local Rules W.D. Wash. LCR

7    72(b).

8           Although Ms. Bishop-McKean is proceeding *pro se* in this matter, she must follow

9    the same rules of civil procedure that govern litigants who are represented by counsel.

10   *See Banks v. Soc'y of St. Vincent De Paul*, 143 F. Supp. 3d 1097, 1101 (W.D. Wash.

11   2015).  Accordingly, Defendants' motion to strike is GRANTED in part and DENIED in

12   part.

13   **B.     Ms. Bishop-McKean's Objections**

14          The court now turns to address only Ms. Bishop-McKean's specific objections that

15   respond to Magistrate Judge Christel's report and recommendation and do not merely

16   repeat arguments addressed therein.

17          1.      Ms. Bishop-McKean's Request for Injunctive Relief

18          Ms. Bishop-McKean begins by objecting that she "filed a motion for cross

19   'injunctive relief', which [Magistrate Judge Christel] construed as a cross-motion for

20   summary judgment."  (Obj. at 1.[2])  Her principal concern is that Magistrate Judge

21

22          [2] Ms. Bishop-McKean seems to have in mind the motion she filed on July 29, 2021,
     which she styled as a motion for a temporary restraining order and preliminary injunction and

1    Christel did not address the forms of injunctive relief she seeks in his report and

2    recommendation.  (*See* Obj. at 1.)  That was proper.  Magistrate Judge Christel

3    recommends granting summary judgment in favor of Defendants, so there was no reason

4    for him to consider Ms. Bishop-McKean's requested relief.  *See eBay Inc. v.*

5    *MercExchange, L.L.C.*, 547 U.S. 388, 390 (2006) (noting that "permanent injunctive

6    relief" is available only "to a prevailing plaintiff").  Likewise, because the court

7    ADOPTS Magistrate Judge Christel's recommendation to grant summary judgment to

8    Defendants on each of Ms. Bishop-McKean's claims, the court need not address the relief

9    Ms. Bishop-McKean seeks.

10         2.    Claims Against Warden Wofford

11         Ms. Bishop-McKean also objects to Magistrate Judge Christel's recommendation

12   to dismiss with prejudice her claims against Warden Wofford based on the lack of

13   allegations or evidence that Warden Wofford "personally participated in [her] medical

14   care or had any causal connection to the alleged wrongful conduct."  (*See* Obj. at 5.)  She

15   contends that Warden Wofford should not be dismissed from this matter because the

16   Warden was aware of Ms. Bishop-McKean's numerous grievances regarding work

17   requirements, access to the law library, lost legal mail, and medical treatment.  (*See id.*

18   (asserting that Warden Wofford has "all her kites/grievances").)  Warden Wofford is

19   _____

20   Magistrate Judge Christel construed as a cross-motion for summary judgment.  (*See* TRO (Dkt.
     # 92); *see also* R&R at 2.)  As Magistrate Judge Christel explained, however, "because
     [D]efendants were permitted to amend their Answer to include an additional affirmative defense,
21   the [c]ourt struck the original motions and permitted the parties to file amended motions."  (*See*
     R&R at 2.)  Ms. Bishop-McKean then filed a motion styled as a cross-motion for summary
22   judgment.  (*See* X-MSJ.)

1   mentioned in the third amended complaint only in connection with an allegation that

2   WCCW's Grievance Coordinator, Andrea Baccetti, interfered with Ms.

3   Bishop-McKean's rights under the First and Fourteenth Amendments by failing to direct

4   emergency medical grievances to Warden Wofford, in violation of WCCW policy.  (*See*

5   3d Am. Compl. (Dkt. # 17) at 17.)

6           Any Eighth Amendment claim Ms. Bishop-McKean intended to assert against

7   Warden Wofford fails because she cannot be held vicariously liable for the acts of staff

8   under her supervision, *see Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001), and Ms.

9   Bishop-McKean does not allege Warden Wofford's personal involvement in any of the

10  allegedly substandard medical care at issue in this suit (*see* 3d Am. Compl.).  Any First

11  Amendment retaliation claim against Warden Wofford also fails because Ms.

12  Bishop-McKean alleged, contrary to her recent assertion that Warden Wofford "was in

13  the know" (*see* Obj. at 5), that her grievances never reached Warden Wofford, apparently

14  in violation of WCCW policy (*see* 3d Am. Compl. at 17).  Thus, even if Ms.

15  Bishop-McKean's grievances were silenced as an act of retaliation, her third amended

16  complaint alleges no facts—and the record contains no evidence—suggesting that

17  Warden Wofford was involved.  (*See* 3d Am. Compl. at 17); *see also Watison v. Carter*,

18  668 F.3d 1108, 1114 (9th Cir. 2012) (requiring plaintiff to allege "a chronology of events

19  from which retaliation can be inferred" in order to state a plausible claim).  And Ms.

20  Bishop-McKean cannot succeed on a Fourteenth Amendment due process claim against

21  Warden Wofford because, even if the Warden was somehow involved in violating

22  //

1    WCCW's grievance process, there is no "separate constitutional entitlement to a specific

2    prison grievance procedure." *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003).

3       Accordingly, having independently considered the matter, the court ADOPTS

4    Magistrate Judge Christel's recommendation to dismiss any claims Ms. Bishop-McKean

5    may have intended to assert against Warden Wofford under the First, Eighth, or

6    Fourteenth Amendments with prejudice.

7       <u>3.</u>    <u>Objections Relating to Evidence of Eighth Amendment Violations</u>

8       A number of Ms. Bishop-McKean's objections pertain to evidence that she

9    contends Magistrate Judge Christel erroneously considered, or failed to consider, in

10    recommending that summary judgment be granted to Defendants on her Eighth

11    Amendment claims.

12       For instance, Ms. Bishop-McKean objects that Magistrate Judge Christel

13    erroneously considered Dr. Colter's testimony that she was transferred out of the

14    Inpatient Treatment Unit ("IPU") and into restrictive housing, in part, because, on the

15    night of October 17, 2017, she "became upset and broke the table in her room and pulled

16    the soap dispenser off the wall" (Colter Decl. (Dkt. # 113) ¶ 17). (*See* Obj. at 3.) Ms.

17    Bishop-McKean contends that Dr. Colter did not witness this incident and so cannot

18    testify about it. (*See id.*) Even if Dr. Colter cannot establish this fact through her

19    testimony, however, the court may rely—as Magistrate Judge Christel did—on Ms.

20    Bishop-McKean's admission that she "had a 'fit' and tore [her] room up" while she was

21    in IPU. (*See* X-MSJ at 180 ¶ 78; *see also* R&R at 6 (quoting X-MSJ at 180 ¶ 78).)

22    Moreover, the record contains additional, uncontroverted evidence that Ms.

1   Bishop-McKean's transfer out of IPU came after she threatened self-harm and that she

2   continued to receive "wellness checks and wound care" while in restrictive housing.  (*See*

3   Colter Decl. ¶ 17, Ex. 11 (nursing assessments documenting behavior that necessitated

4   Ms. Bishop-McKean's transfer to restrictive housing, as well as wellness checks and pain

5   medication administration that occurred while she was in restrictive housing).)  Thus,

6   even discounting Dr. Colter's testimony about Ms. Bishop-McKean's behavior on

7   October 17, 2017, the record supports Magistrate Judge Christel's conclusion—and the

8   court independently finds—that Ms. Bishop-McKean's transfer from the IPU does not

9   reflect deliberate indifference for her care.  (*See* R&R at 20.)

10          Ms. Bishop-McKean also objects that Magistrate Judge Christel failed to consider

11   a declaration submitted by Ms. Arndt in ruling on the parties' cross-motions for summary

12   judgment.  (*See* Obj. at 2.)  Magistrate Judge Christel plainly did consider this

13   declaration, and even relied on it to conclude that a factual dispute exists regarding

14   whether Ms. Bishop-McKean had visible signs of an infection on October 24 and 25,

15   2017.  (*See* R&R at 4 n.5 (citing X-MSJ at 130 (Ms. Arndt's July 23, 2021 declaration);

16   *see also id.* at 23.)  That factual dispute was not outcome determinative in Magistrate

17   Judge Christel's view because, only a few days after October 25, 2017, "three different

18   medical professionals found no reason to suspect an infection."  (R&R at 25.)  Thus, Ms.

19   Bishop-McKean's "bald assertion that an examination" on October 25, 2017 "would have

20   led to an earlier MRSA diagnosis [wa]s purely speculative and unsupported by

21   evidence."  (*Id.*)  The court has independently reviewed the record and agrees with

22   Magistrate Judge Christel that the facts, including those set forth in Ms. Arndt's

ORDER - 9

1    declaration, are in dispute regarding Defendants' awareness that Ms. Bishop-McKean's

2    surgical wound was infected.  The court further agrees that her Eighth Amendment claim

3    nevertheless fails because she cannot establish that harm resulted from Defendants'

4    failure to diagnose MRSA on October 25, 2017.  (*See id.* at 24-25 (citing *Shapley v.*

5    *Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).)

6          Ms. Bishop-McKean's objection to Magistrate Judge Christel's acceptance of an

7    October 24, 2017 chart note taken by Ms. Meitninger-Dunlap to establish that Ms.

8    Bishop-McKean's surgical wound was "'clean, dry and intact' without odor, drainage or

9    other signs of infection" is similarly without force.  (*See* R&R at 24 (citing Colter Decl.

10   ¶ 20, Ex. 12 (October 24, 2017 note from Ms. Meitninger-Dunlap); *see also* Obj. at 6.)

11   Ms. Bishop-McKean disputes that any WCCW provider entered her room on October 24

12   or 25, 2017, which, if true, would likely mean none were able to establish whether her

13   wound had an odor, or not.  (*See* Obj. at 6.)  That conclusion does not conflict with

14   Magistrate Judge Christel's ultimate conclusion that "an issue of material fact exists

15   regarding [D]efendants' knowledge of a serious medical need," but that Ms.

16   Bishop-McKean's claim nevertheless fails because she cannot establish that she was

17   harmed by Defendants' conduct on October 24 or 25, 2017.  (*See* R&R at 24 (citing

18   *Shapley*, 766 F.2d at 407.)  Accordingly, omitting Ms. Meitninger-Dunlap's October 24,

19   2017 chart note from the record does not change the court's conclusion that Defendants

20   are entitled to summary judgment on Ms. Bishop-McKean's Eighth Amendment claims.

21          Last, Ms. Bishop-McKean objects to Dr. Colter's testimony that Ms.

22   Bishop-McKean had "no indication of infection" on October 25, 2017 and that her

ORDER - 10

1    "infection did not begin until well into November of 2017" (Colter Decl. ¶ 31).  (*See also*

2    Obj. at 3.)  It is not clear whether Magistrate Judge Christel considered that testimony.

3    (*See generally* R&R.)  In any event, striking that testimony would neither eliminate the

4    existence of a factual dispute regarding Defendants' subjective awareness of Ms.

5    Bishop-McKean's infection on October 25, 2017, nor change the court's conclusion that

6    the record contains no evidence showing that Ms. Bishop-McKean was harmed by

7    Defendants' failure to diagnose an infection on October 25, 2017, given the examinations

8    conducted by three different providers on October 30 and 31, 2017, none of whom

9    observed an infected surgical wound.  (*See* Colter Decl. ¶ 24 (noting that she found no

10   "evidence of infection" during October 31, 2017 examination); *see also id.*, Ex. 16

11   (reporting a normal temperature and no obvious signs of infection); *see also* R&R at 24-

12   25 (noting that, in the following days, "three different medical professionals found no

13   reason to suspect an infection").)

14        Because none of Ms. Bishop-McKean's objections affect the court's conclusion

15   that the record does not support the existence of an Eighth Amendment violation, the

16   court ADOPTS Magistrate Judge Christel's recommendation to grant summary judgment

17   to Defendants on those claims.

18        4.    Statute of Limitations

19        Ms. Bishop-McKean further objects to Magistrate Judge Christel's

20   recommendation that summary judgment be granted to Defendants on any claims arising

21   from conduct that occurred prior to May 1, 2017, because those claims are barred by the

22   statute of limitations.  (*See* Obj. at 9-12; R&R at 28.)  Ms. Bishop-McKean contends that

1    Magistrate Judge Christel failed to consider evidence that might justify tolling the statute

2    of limitations, including evidence that she faced difficulty sending and receiving mail,

3    and accessing the law library.  (*See id.* at 9.)  The impediments Ms. Bishop-McKean

4    describes, however, purportedly affected her ability to lodge a pre-suit tort notice with the

5    State of Washington's Office of Risk Management ("ORM"), which she mistakenly

6    believed was required to satisfy the Prison Litigation Reform Act's ("PLRA")

7    administrative exhaustion requirement.  (*See id.* at 9-10.)

8         If Ms. Bishop-McKean was suing a "state officer, employee, or volunteer" for

9    money damages under a state law tort theory, she would have needed to provide pre-suit

10   notice to ORM pursuant to RCW 4.92.110.  Compliance with that statute is not a

11   prerequisite to bringing a federal civil rights action in federal court, however, and so does

12   not provide a reason to extend the statute of limitations.  *See Joshua v. Newell*, 871 F.2d

13   884, 886 (9th Cir. 1989) (holding that RCW 4.92.110 "does not apply to section 1983

14   claims brought in federal court").  A federal statute, the PLRA, does require prisoners to

15   exhaust administrative remedies before proceeding to federal court, and tolls the

16   applicable statute of limitations while the prisoner-plaintiff is actively engaged in

17   exhausting that mandatory process.  *See Soto v. Sweetman*, 882 F.3d 865, 869-70 (9th

18   Cir. 2018) (first citing 42 U.S.C. § 1997e(a)); and then citing *Brown v. Valoff*, 422 F.3d

19   926, 942-43 (9th Cir. 2005)).  But the administrative relief that the PLRA required Ms.

20   Bishop-McKean to exhaust before proceeding to federal court was WCCW's internal,

21   administrative grievance process.  *See Armstead v. Washington Corr. Ctr. for Women*,

22   No. C18-5475-RBL-TLF, 2019 WL 7484677, at *5-6 (W.D. Wash. Dec. 12, 2019)

1    (noting that WCCW inmates "may file administrative grievances pertaining to a wide

2    range of issues related to an inmate's incarceration" and that "the grievance procedure

3    consists of four levels of review"), *report and recommendation adopted*, No.

4    C18-5475RBL-TLF, 2020 WL 59612 (W.D. Wash. Jan. 6, 2020).

5        It is clear from the record that Ms. Bishop-McKean routinely grieved issues she

6    was having with WCCW, including those relating to the claims she raises in this action.

7    But she does not argue, and the record does not show, that she waited to file this federal

8    action because WCCW was taking too long to render a final decision on her grievance.

9    (*See* Obj. at 9-12 (explaining that she waited to file this federal action until she had

10   successfully provided pre-suit notice to ORM).)

11       Ms. Bishop-McKean also seems to argue that the statute of limitations should not

12   bar her from asserting a claim relating to the Care Review Committee's ("CRC")

13   consideration of her medical case in 2015, because she only found out recently that she

14   "was approved for surgery" at that time.  (*See* Obj. at 5.)  However, the record does not

15   show that the CRC approved Ms. Bishop-McKean for surgery in 2015, only that the CRC

16   thought that a neurosurgical consultation with Dr. Mohit would be appropriate.  (*See*

17   Colter Decl. ¶ 8, Ex. 2 (2015 CRC report).)  After examining Ms. Bishop-McKean, Dr.

18   Mohit recommended a more conservative, non-surgical approach involving use of a

19   muscle relaxant (Robaxin) and non-steroidal anti-inflammatory medication.  (*See id.* ¶ 9,

20   Ex. 3.)  Thus, even if this claim is not time-barred, it would nevertheless fail because "[a]

21   difference of opinion between a prisoner-patient and prison medical authorities regarding

22   //

ORDER - 13

1    treatment does not give rise to a [§] 1983 claim." *See Franklin v. State of Or., State*

2    *Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981).

3            Accordingly, the court concludes that any claims arising from conduct that

4    occurred prior to May 1, 2017 are time barred and ADOPTS Magistrate Judge Christel's

5    recommendation to grant summary judgment to Defendants on those claims.

6            5.    Ms. Bishop-McKean's Objection Regarding Relief Under Federal Rule of
                  Civil Procedure 60(b)

7

8            Finally, Ms. Bishop-McKean asserts that vaguely alleged discovery abuses by

     Defendants provide grounds for "relief from judgment." (*See* Obj. at 8.) "[T]he court

9    may relieve a party . . . from a final judgment, order, or proceeding" for a variety of

10   reasons, including "misconduct by an opposing party." *See* Fed. R. Civ. P. 60(b).

11   Magistrate Judge Christel's report and recommendation is not a final judgment or order,

12   however. *See Demorest v. Ryan*, 156 F. App'x 931, 932 (9th Cir. 2005) (noting that "a

13   magistrate judge's report and recommendation" is "a nonfinal order"). Thus, Ms.

14   Bishop-McKean's request for relief under Rule 60 is DENIED as prematurely raised. *See*

15   *King v. Curry*, No. EDCV 04-1107-R RCF, 2011 WL 1790953, at *1 (C.D. Cal. May 9,

16   2011) (denying Rule 60(b) motion for relief from a report and recommendation as

17   prematurely raised).

18                            **III.    CONCLUSION**

19           For the foregoing reasons, the court GRANTS in part and DENIES in part

20   Defendants' motion to strike (Dkt. # 147); ADOPTS Magistrate Judge Christel's report

21   and recommendation in full (Dkt. # 136); GRANTS Defendants motion for summary

22

ORDER - 14

1    judgment (Dkt. # 112); and DENIES Ms. Bishop-McKean's cross-motion for summary

2    judgment (Dkt. # 116).

3          Dated this 2nd day of September, 2022.

4

5                                                        _____

6                                                        JAMES L. ROBART
                                                         United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER - 15